476   People ex rel. Kiehm v. Board of Education.

Fourth Department, November, 1921.        [Vol. 198

---

The People of the State of New York ex rel. Charles Kiehm and Albert H. Jennison, Relators, v. Board of Education of the City of Utica, New York, and Edward O. Folsom, Secretary of Said Board, Respondents.

Fourth Department, November 16, 1921.

Schools — certiorari to review action of board of education in refusing to audit claims by architects for plans and estimates for new school building — no adequate remedy at law — board of education of city of Utica had power to engage architects to plan new school building — Education Law, § 875, construed — board not required to advertise for estimates on professional services — board not required before engaging architects to pass resolution provided for by Education Law, § 875, subd. 3 — Education Law, § 877, subd. 10, limiting right to incur liability not applicable — board of education had power to audit claim — Second Class Cities Law, § 79, not applicable.

The relators, professional architects, in pursuance of a resolution of the board of education of the city of Utica, prepared plans and drawings for a new school building together with a detailed estimate of the cost of erecting such building. After advertising for bids for the construction of said school building the said board abandoned the project and refused to audit the relators' claim on the ground that it did not have the legal right so to do.

*Held*, that the claim having been presented to the board and it having disallowed it, certiorari is the proper remedy; the relators have no adequate remedy at law.

By virtue of section 875 of the Education Law the said board had the power and authority to build a new school building if in its judgment it was needed, upon passing a resolution specifying in detail the necessity therefor and estimating the funds necessary, and, having that power, it had the power to employ architects to draw the necessary plans and to make the necessary estimates and specifications.

The requirement of subdivision 8 of section 875 of the Education Law that the said board shall advertise for estimates where the amount involved is over $1,000 does not apply to a situation involving professional services.

It was not necessary for said board to pass a resolution, under subdivision 3 of section 875 of the Education Law, specifying in detail the necessity for a new school building and estimating the amount of funds necessary for such purpose, before engaging relators to prepare the plans, for the services of the relators were in their nature necessary, in part at least, to enable the board to pass the resolution, and furthermore the board cannot take advantage of its failure to do that which it should have done.

The contract employing relators was not void under subdivision 10 of section 877 of the Education Law which prohibits the board from incurring a liability chargeable against the funds under its control in excess of the amount appropriated.

The said board had the power to audit the claim of the relators, and if it allows the claim it has the power to put into its budget an item therefor to secure funds with which to pay it, and the fact that at the time the claim is presented there may not be funds available to pay the same does not relieve the board from passing on the claim on its merits.

Section 79 of the Second Class Cities Law, prohibiting a board from expending any sum or entering into any contract therefor " for any of the purposes for which provision is made in the annual estimate in excess of the amounts appropriated in said estimate," is not applicable, since the contract in question did not involve the expenditure of money for any of the purposes for which provision was made in the annual estimate.

CERTIORARI issued out of the Supreme Court and attested on the 8th day of January, 1921, directed to the Board of Education of the City of Utica, N. Y., and another, commanding them to certify and return to the office of the clerk of the county of Oneida all and singular their proceedings had in respect to the auditing, allowance and payment of certain claims of the relators against the defendants.

*Merrill, Sisson & Hanagan* [*August Merrill* and *Fred J. Sisson* of counsel], for the relators.

*Fred F. Scanlan* [*George E. Dennison* of counsel], for the respondents.

478    People ex rel. Kiehm *v.* Board of Education.

Fourth Department, November, 1921.    [Vol. 198

Hubbs, J.:

The relators are professional architects engaged in business as copartners at Utica, N. Y. In June, 1919, the board of education of the city of Utica was considering the erection of a new school building to be located in the sixteenth ward of the city. On June 17, 1919, at a meeting of the said board a resolution was duly passed employing the relators to prepare drawings and plans, together with a detailed estimate of the cost of erecting such building. In pursuance to such resolution the relators entered upon the work and prepared preliminary sketches, plans, drawings and estimates, which were submitted to the board, and from time to time changes and alterations were made therein. The relators, at the request of the board, visited various cities to inspect school buildings, and also consulted other experts and submitted the plans for criticism and suggestions. The final plans and estimates were submitted to the board on February 17, 1920, with a statement of the relators' account based on the estimated cost of the building. The board at that time adopted a resolution authorizing the advertisement for bids for the proposed building according to the specifications submitted by the relators. A resolution was also adopted referring the relators' bill to the business manager and auditing committee to report on the same at the next meeting. At a meeting on March 16, 1920, a resolution was adopted allowing the bill as presented by the relators.

The board advertised for bids and bids were received. The bids received were higher than was expected, and, as a result, at a meeting on April 20, 1920, a resolution was passed rejecting the bids submitted. At the same meeting resolutions were passed abandoning the project to erect said school building. During that time the board had failed and refused to deliver to the relators the bill which had been approved on March 16, 1920. Meanwhile, a new claim had been filed by the relators which included the items covered by the first bill and additional items and amounts so that the second claim amounted to $29,904.15. At various meetings of the board the relators had pressed for the audit of their claim and various discussions took place about it. Finally, at a meeting held on October 12, 1920, the board by resolution disapproved the bill. Prior to such action the board had secured the opinion of the corporation

counsel as to the legality of the bill and the authority of the board to audit the same. Said opinion was to the effect that the claim was not legal and that the board could not legally audit and pay it.

It is quite apparent from the petition and return herein that the board did not disallow the claim upon its merits but based its refusal to allow it upon the ground that it was not a legal claim. The respondents, in their return, raise the question that the relators have an adequate remedy at law. There is no force in such contention. The claim having been presented to the board and it having disallowed it, certiorari is a proper remedy. (*People ex rel. Oneida Valley Nat. Bank* v. *Supervisors of Madison County,* 51 N. Y. 442.) The board never having passed upon the merits of the claim, the question for our determination is whether or not it has the legal right to audit the claim. That involves a construction of the statutes governing the board.

The powers and duties of the board are governed by article 33A of the Education Law (as added by Laws of 1917, chap. 786). Subdivision 1 of section 875 of article 33A provides that a board of education " shall have power * * * to construct new [school] buildings, subject to such limitations and restrictions and exceptions as are herein provided." Subdivision 3 of section 875 of article 33A provides: " Whenever in the judgment of a board of education the needs of the city require a new building for school purposes * * * such board shall pass a resolution specifying in detail the necessity therefor and estimating the amount of funds necessary for such purpose. An item for such amount if funds are not available for the construction of such building may be included in the next annual budget if not included in a special budget as herein provided."

From the foregoing it is clear that the board had the authority to build a new school building if in its judgment it was needed, upon passing a resolution specifying in detail the necessity therefor and estimating the funds necessary therefor, and if the funds were not available the amount might be included in the next annual budget if not included in a special budget.

By virtue of section 73 of the Second Class Cities Law, section 877 of article 33A of the Education Law provides that the board of education shall file on or before November first of

each year its annual estimate for the purposes enumerated, among those specified in subdivision 1 of section 877 of the Education Law being " c.   *   *   *   the construction of new buildings   *   *   *   and to meet any other indebtedness or liability incurred under the provisions of this chapter or other statutes, or any other expenses which the board of education is authorized to incur." Subdivision 5 of section 877 provides that the common council shall tax and collect the amount specified in the annual estimate and place the same to the credit of the board of education " except that a tax for the purposes specified in paragraph c of subdivision one of this section shall be levied payable in installments and bonds therefor shall be issued and sold as hereinafter provided." (See, also, art. 33A, § 880.) That is in case of a new school building and to pay debts and expenses incurred, etc. The funds credited to the board cannot be paid out except on audit of said board. (Art. 33A, § 880, subd. 3.)

These sections of the statute constitute a complete scheme for transacting the business of the board. The board has power to build a new building by passing the resolution required in the statute. The funds are raised as therein provided. The board must file an annual estimate for the purposes set forth. The common council must raise the funds by taxation and place them to the credit of the board to be paid out upon the audit of the board.

Undoubtedly the board, having the power and authority to build a new building, had power and authority to employ architects to draw the necessary plans and to make the necessary estimates and specifications. Without such services the board could not make out its estimates of the cost of the proposed building. The board, acting within its authority, did, by resolution, employ the relators who furnished plans, estimates and specifications which were used by the board in preparing the proposition to submit to prospective bidders. The board then refused to audit the relators' claim upon the ground that it did not have the legal right so to do. It says that the contract with the relators was void, prohibited by subdivision 8 of section 875, aforesaid, and unenforcible, as the amount involved was over $1,000 and the board did not advertise for estimates. It is clear that the section referred

to does not apply to a situation like this involving professional services. (*New York Central R. R. Co. v. County of Westchester*, 173 App. Div. 263; affd., 224 N. Y. 646.) It is urged that the relators cannot collect under the contract because the board of education did not comply with subdivision 3 of section 875 of the Education Law, which provides as follows: " Whenever in the judgment of a board of education the needs of the city require a new building for school purposes * * * such board shall pass a resolution specifying in detail the necessity therefor and estimating the amount of funds necessary for such purpose." There are two answers to such contention. *First,* the board cannot, in this proceeding, rely upon its failure or omission to do what it should have done and what it was within its power to do as a defense to a contract made by it. (*Van Dolsen v. Board of Education,* 162 N. Y. 446.) *Second,* the services rendered by the relators were in their nature necessary, in part at least, to enable the board to pass the resolution provided for in subdivision 3 of section 875, aforesaid. It requires the services of an architect or of a skilled builder to make an estimate of the funds necessary to build a new school building.

It is also urged by the board of education that the contract employing the relators was void under subdivision 10 of section 877 of article 33A, which reads as follows: " 10. A board of education shall not incur a liability or an expense chargeable against the funds under its control or the city for any purpose in excess of the amount appropriated or available therefor or otherwise authorized by law."

This is a provision found in most statutes of the kind for the purpose of protecting municipalities against the extravagance of the different departments. I think it is not applicable to the situation involved in this case. Where a city board makes up a budget, the budget is approved by the common council and the money is raised, it is unlawful for such board to incur liability beyond the amount so raised and appropriated. In the case in question the board was acting under a statute which, in the first instance, required it to prepare an estimate of the cost of the proposed building. To do that it was necessary to have the services of an expert. The board could

not comply with the law and advertise for bids until it had had such expert services and no appropriation could be made for such services until the cost of the building was ascertained, as the cost of such services was based upon the cost of the building. It is clear from the reading of the statute that the board was required to determine the cost of the construction of the new building before any appropriation could be made therefor or any item could be placed in the budget therefor. The statute also provides that the funds for the erection of such building shall be raised by taxation, payable in installments, and by issuing and selling bonds therefor. Clearly, the funds for these services could not have been appropriated or available, within the meaning of said subdivision 10, and such was not the intent and meaning of the statute construed as a whole. The board, under the statute, being authorized by law to incur liability for the services, was also authorized by law within the meaning of said subdivision 10 to place the amount in the budget to be raised according to the provisions of the statute.

It seems to me that the board had the power to employ the relators for the purpose of making the estimates which the board was required to furnish and that the board has the power to audit the claim filed for the services rendered. Also, that the board has the power, in case such claim is audited and allowed, to put in its budget an item therefor to secure funds with which to pay it, and the fact that there might not have been or may not now be sufficient funds to the credit of the board with the city treasurer available to pay the amount at which the claim may be audited does not relieve the board from the duty of passing upon the claim upon its merits and, if it is allowed, from putting the amount of the claim in its budget and raising the funds required to pay it.

Attention is called, also, to section 79 of the Second Class Cities Law (as amd. by Laws of 1912, chap. 195). That section is not applicable. It prohibits a board from expending any sum or entering into any contract therefor " for any of the purposes for which provision is made in the annual estimate in excess of the amounts appropriated in said estimate." The contract for the services of the relators did not involve the expenditure of money for any of the purposes for which pro-

vision was made in the annual estimate. The services performed were necessary to be performed in fixing the amount to be called for in the budget and to be included in an annual estimate thereafter to be made.

If I am right in the conclusion which I have reached it is unnecessary to discuss the question of whether or not funds were actually available to pay for the services of the relators. Certain preliminary objections were filed to the hearing of this proceeding. Such objections are without force, as this is a proceeding not to compel the payment of a claim of a certain amount but to compel the board to pass upon said claim upon its merits.

I recommend that the writ be sustained, with fifty dollars costs and disbursements, and the matter remitted to the board of education to pass upon and audit the claim upon its merits.

All concur.

Writ of certiorari sustained, determination of board of education annulled, with fifty dollars costs and disbursements to relators, and matter remitted to the board of education to pass upon and audit the claim upon its merits.