Nellie Marie Austin Wooley and Another, as Executors, etc., of W. Thomas Wooley, Deceased, Appellants, *v.* City of Schenectady, Respondent.

Third Department, May 15, 1929.

*Borst & Smith* [*George B. Smith* of counsel], for the appellants.

*Maurice B. Flinn,* for the respondent.

Whitmyer, J. The action was brought to recover for architectural services, under a contract, dated May 21, 1923, between the defendant, through its mayor, and plaintiff's testator, employ-

ing the testator to prepare plans, detailed drawings and specifications for and to superintend the construction of a school building, to be erected on a site between Euclid avenue and Broadway, in the city of Schenectady, N. Y. On February 21, 1923, the board of education of the city, by resolution, requested the common council of the city " to authorize the Commissioner of Public Works and the City Engineer to employ an architect to prepare plans and specifications for an eight-room school building to replace " the existing Bellevue School (Broadway Building), " to be built upon the plot in a position to be indicated by the Board of Education." On May 7, 1923, the common council adopted an ordinance which authorized the said officials to prepare plans and specifications, or to cause same to be prepared, and " to employ such expert assistance as may be necessary for the purposes * * * and for the supervision of the work, * * * and the Mayor to enter into a contract therefor." Pursuant thereto and on May 21, 1923, the mayor signed a contract which was thereafter approved by the commissioner of public works and the city engineer. The compensation of the testator was to be five per cent of the actual cost of the complete construction, except that it was to be a percentage thereof in case of abandonment or suspension for an indefinite period and in case only preliminary studies and general working drawings should be prepared and submitted. Testator made some preliminary studies and drawings. They were not submitted. The plans, drawings and specifications were to be at all times subject to the approval of the board of contract and supply. Such approval was not obtained. After the ordinance, the common council authorized bonds in the sum of $160,000 for the building and the fees and later authorized additional bonds therefor. But the site and the buildings were enlarged, testator's preliminary work was not used, and the contract was canceled. The action followed. Article 33-A of the Education Law, as added by Laws of 1917, chapter 786, was then in force. Subdivision 3 of section 875 thereof provides that " Whenever in the judgment of a board of education the needs of the city require a new building for school purposes * * * such board shall pass a resolution specifying in detail the necessity therefor and estimating the amount of funds necessary for such purpose," and subdivision 4 provides that " no building shall be constructed, remodelled or enlarged until the plans and specifications therefor are approved by the board of education." These provisions were not followed. Subdivision 6 of section 875 of the law provides that " In a city of the second class in which the common council, the board of estimate and apportionment and the board of contract and supply

and the commissioner of public works or other city officials, or any one or more thereof, has the authority under the law in force prior to the time this act takes effect to erect, remodel, improve, or enlarge school buildings or to purchase supplies or real property for any school purpose, such officers, board or boards shall continue to possess such powers and duties and to perform such functions." Chapter 481 of the Laws of 1908, " An Act to provide for a department of public instruction in the city of Schenectady," was in force at the time of the passage of but was wholly repealed by said chapter 786 of the Laws of 1917, except that section 7 thereof remained in force and effect in the city of Schenectady, by virtue of said subdivision 6 of section 875 of chapter 786 of the Laws of 1917, above quoted, and section 7 authorized the board of education to recommend to the common council the erection of any school building and provided that the board of contract and supply, when authorized thereto by an ordinance of the common council, should erect such buildings in the manner and upon the conditions prescribed in chapter 473 of the Laws of 1906. The board of education could have proceeded under the Education Law and, if it had, could have employed the testator to do the things requested without asking for bids. ( *People ex rel. Kiehm* v. *Board of Education,* 198 App. Div. 476, 480, 481.) Apparently, the board intended to proceed under chapter 481 of the Laws of 1908, but, instead of merely making a recommendation to the common council, requested that body to authorize two officials, who had no power or responsibility in the premises, to employ expert assistance. Under the special act, the common council had power only to adopt or reject the recommendation and, upon such adoption, had power only to authorize the board of contract and supply to proceed in the manner prescribed by the Second Class Cities Law. From that law (§§ 120–125) and the charter of the city (Laws of 1907, chap. 756, § 200) as it then stood, it is evident that all city activities relating to the performance of work or the purchase of materials are required to be carried out by contracts, to be entered into and executed by the board of contract and supply, in all cases where the expense is to exceed the sum of $250, unless by ordinance of the common council adopted by a vote of not less than four-fifths of all the members thereof and unanimously approved by the board of estimate and apportionment, it is determined to be impracticable to procure such work or materials, or both, by contract, in which case the ordinance must designate the officer, board or department to procure same. (Second Class Cities Law, § 120, as amd. by Laws of 1927, chap. 18.) And section 125, which

provides that " No person shall have power to make any purchase or contract any debt for which the city shall be liable unless specifically authorized by the provisions of this chapter," is a limitation of the power to purchase and contract. No such ordinance was adopted and the vote of the board of estimate and apportionment upon the ordinance, as adopted, was not unanimous.

Thus, the contract was illegal and the judgment should be affirmed.

VAN KIRK, P. J., HINMAN and DAVIS, JJ., concur; HASBROUCK, J., dissents, with an opinion.

HASBROUCK, J. (dissenting). The sole question in the case is, what department of the city government had the right to hire an architect to prepare plans and specifications for the new school building?

The Education Law according to its own terms does not apply. (§ 875, subd. 6.)

The prescribing law is section 7 of chapter 481 of the Laws of 1908. It provides: " The board of education shall recommend to the common council * * * the erection of any school building."

The resolution of the board of education requested the common council to authorize the commissioner of public works and city engineer to employ an architect to prepare plans and specifications for an eight-room school building to replace the present structure. The common council then adopted an ordinance authorizing the commissioner of public works and the city engineer to prepare or cause to be prepared plans and specifications for the construction of a new school and " to employ such expert assistance as may be necessary for the purposes of carrying out the provisions thereof," and authorized the mayor to enter into a contract for such expert assistance.

The board of contract and supply had nothing to do with the preparing of the plans and specifications. The statutory method seems to be that the common council shall, when plans and specifications are supplied under its direction, pass an ordinance authorizing the construction of a building in accordance therewith. The department of the government which may carry out the contract is the board of contract and supply. It " may erect *such* buildings in the manner and upon the conditions prescribed in chapter four hundred and seventy-three of the laws of nineteen hundred and six " (Second Class Cities Law, § 120).

What building? The building authorized by the ordinance of the common council. But how can the common council authorize

the erection of a school building without knowing what it authorizes and how can it know what to authorize without plans and specifications?

The scheme of the statute does not contemplate the functioning of the board of contract and supply until the ordinance of the common council calls upon it.

It is of no avail to the respondent to invoke section 125 of the Second Class Cities Law which says: " No person shall have power to make any purchase or contract any debt for which the city shall be liable unless specifically authorized by the provisions of this chapter."

There are two reasons why section 125 is inapplicable. The first is, that the statutory scheme has got to be given a reasonable construction, and in yielding to such construction it is necessary to hold that before the common council could secure plans and specifications upon which to order a school building built, it would be necessary to have the services of an expert. (*People ex rel. Kiehm* v. *Board of Education,* 198 App. Div. 476, 481.)

The second is, in speaking of a statute similar to section 125, the court further said in the *Kiehm* case: " This is a provision found in most statutes of the kind for the purpose of protecting municipalities against the extravagance of the different departments. I think it is not applicable to the situation involved in this case. Where a city board makes up a budget, the budget is approved by the common council and the money is raised, it is unlawful for such board to incur liability beyond the amount so raised and appropriated. In the case in question the board was acting under a statute which, in the first instance, required it to prepare an estimate of the cost of the proposed building. To do that it was necessary to have the services of an expert. The board could not comply with the law and advertise for bids until it had had such expert services and no appropriation could be made for such services until the cost of the building was ascertained, as the cost of such services was based upon the cost of the building."

Finally it appears to me that the city is estopped from denying the power of the mayor to contract when it holds the mayor out to innocent third persons as capable of contracting.

If the common council should have passed the ordinance adopted by a vote of not less than three-fourths of all the members, unanimously approved by the board of estimate and apportionment determining that it was impracticable to procure the services of an architect, the city may not rely " upon its failure or omission

to do what it should have done and what it was within its power to do as a defense to a contract made by it." (*People ex rel. Kiehm* v. *Board of Education, supra; Van Dolsen* v. *Board of Education*, 162 N. Y. 446.)

I am unable to concur in the opinion of the court.

Judgment affirmed, with costs.