RONDOUT SAVINGS BANK, Plaintiff, *v.* CITY OF KINGSTON, Defendant. (Four Other Cases.)

Supreme Court, Albany County, July, 1932.

*V. B. Van Wagonen, Philip Elting* and *H. H. Flemming,* for the plaintiffs.

*Chris J. Flanagan,* for the defendant.

STALEY, J. Plaintiffs herein move for summary judgment to recover the principal and interest on certificates of indebtedness aggregating $135,000, issued by the defendant on November 18, 1931, and which by their terms became due on March 15, 1932.

The plaintiffs allege that these certificates were duly issued in behalf of defendant after proceedings duly enacted by the mayor and common council of the city. These allegations are denied in defendant's answers, which also allege as a separate defense that the purported certificates of indebtedness represent a temporary loan of moneys not borrowed in anticipation of the collection of taxes of the current year, that the loans were not for any betterment work or improvement of a permanent nature, and that the same were illegally issued and are not valid obligations of the defendant.

If plaintiffs succeed upon this motion, it must be because these defenses are not of sufficient substance and merit to create an issue for trial or do not constitute a defense to the complaint.

The plaintiffs, like all persons dealing with public officers and in the securities of municipalities, are chargeable with notice of the powers and authority that such public officers possess (*Thomas* v. *City of Richmond,* 12 Wall. 349) and the manner in which the faith and credit of a municipality through the exercise of these powers may be lawfully pledged and conclusively established. They are

not required to follow the proceeds of the loans to assure prudent and proper use, but they are chargeable with the knowledge of the procedural basis upon and through which the securities were issued to satisfy themselves that the municipality has the power to make the loan as proposed and that this power has been exercised in the manner required by the law governing its exercise.

An examination of the record leading up to the issuance of the certificates of indebtedness made a part of the pleadings and papers herein discloses that on November 10, 1931, the mayor of the defendant transmitted to its common council a communication setting forth the necessity to borrow funds to carry the city through until tax moneys were available in the years 1932–1933. This communication stated that $5,000 would be required for the board of health because of a smallpox and infantile epidemic; that $30,000 would be required for the board of public welfare, because of extraordinary expenditures for relief; that $125,000 would be required for the board of public works, $25,000 for additions and betterment of a permanent nature, and $100,000 for ordinary maintenance and operation.

The finance (ways and means) committee of the common council at the meeting to which the mayor's communication was transmitted reported upon investigation of the matter that the moneys appropriated in the resolution attached are necessary to meet obligations already incurred and to carry on the operations of the city to the end of the year.

The resolution was then adopted by the common council, in which it was determined " that there be appropriated and set apart in addition to the appropriations heretofore made for the year 1931 " the sum of $135,000 to be raised upon the faith and credit of the city by the issuance and sale of certificates of indebtedness to be payable on March 15, 1932, and that the amount of these certificates be included in the tax budget of the year 1932 and shall be raised by taxes in the tax levied for such year in addition to the amount of taxes otherwise to be raised for said year, and that the respective certificates shall be paid out of the funds so raised.

These, in substance, constitute the proceedings upon which the certificates of indebtedness were issued, and upon which they were accepted by the plaintiffs as valid obligations of the defendant. Are they sufficient in fact and law to justify a summary judgment in favor of the plaintiffs payable from the taxes now collected as directed by the resolution authorizing the issuance of the certificates? In my opinion they are not.

The city of Kingston under its charter, chapter 747 of the Laws of 1896, has the rights, powers and privileges conferred by the

statutes of the State, including those conferred by its charter and the revisions thereof. An annual budget or estimate is required to be presented by the mayor after public hearing to the common council at its first meeting held after the first day of January in each year, which shall contain the estimates of the amount to be raised by taxes in the annual city tax levy for the fiscal year beginning the preceding first day of January. The common council shall finally determine the amount to be included in the annual city tax levy, and such amount shall be levied upon the persons and property of the city and collected in the manner provided by the charter.

The purpose of a municipal budget is to create a definite limit of liability on the part of the taxpayers for the cost and operation of the functions of their local government during the fiscal year, and to specify the amounts to be appropriated and used for the operation of each particular function and activity. It is an instrument of annual municipal financial limitation, and fixes the bounds in amounts and purpose of expenditure which municipal officers cannot exceed. Keeping within its bounds is not alone the safeguard afforded by the law to the taxpayers, but likewise the duty of municipal officers.

All cities of this State have the power subject to the Constitution and general laws of the State " to become indebted for any public or municipal purpose and to issue therefor the obligations of the city, to determine upon the form and the terms and conditions thereof, and to pledge the faith and credit of the city for payment of principal and interest thereof, * * *." (General City Law, § 20, subd. 5.)

This statutory declaration embodies the general power of the city to pledge its faith and credit. This power, however, is not unlimited. It is expressly made subject to the Constitution and general laws of the State, and its exercise, therefore, must be in accord with the requirements of those laws and the State Constitution.

" No city shall issue any obligations for expenses for maintenance, repairs or current operation or administration of the property or government of the city or otherwise than for betterments, improvements and acquisitions of property of a permanent nature, or for the purpose of refunding obligations of the city." (General City Law, § 23, subd. 2, par. a.)

The purpose of this provision is plain and obvious. It prohibits the raising of funds for the current operation of the city otherwise than by taxation. It is designed to prevent a city from defraying in any year its annual operating expenses or any part thereof by borrowed money.

" Moneys shall not be borrowed by a municipal corporation on

temporary loan, except in anticipation of the taxes of the current fiscal year, and for the purposes for which such taxes are levied, and shall not be in excess of the amount of such taxes, * * *. Such loans made in anticipation of the taxes of the current fiscal year and for the purposes for which such taxes are levied shall be payable out of the taxes on account of which such loans are made, and in no case shall interest run on any such loan after such taxes are paid into the treasury of the corporation." (General Municipal Law, § 5.)

Under this section, temporary loans are authorized, but the power to make them is one limited in condition and amount. The necessity for funds in anticipation of the collection of taxes for the current year is the condition, and the total uncollected taxes for the current year is the amount.

The certificates of indebtedness here involved are not temporary loans permitted under this section, for the resolution authorizing them expressly states that the funds for which they were issued are "in addition to the appropriations heretofore made for the year 1931." They are not payable out of the taxes for the current year which remain uncollected, but out of taxes to be assessed and levied and to be included in the tax budget for the following year. To what extent these funds were appropriated "for additions and betterments of a permanent nature" remains to be established upon the trial.

The plaintiffs contend that these funds were rendered necessary by reason of a condition of emergency due to the need of relief for the unemployed, and that the power to make these loans in the manner made is sustained by section 10 of chapter 798 of the Laws of 1931, extraordinary session. This act was passed at an extraordinary session of the Legislature commencing on the 25th of August, 1931, to relieve the people of the State from the hardship and suffering caused by unemployment, and created for such purpose a temporary emergency relief administration.

Section 10 of the act provides that "the legislative body of a municipal corporation may appropriate and make available sufficient money to pay for work relief and/or home relief and may raise such money during the emergency period by interest bearing notes, certificates of indebtedness or other obligations of such municipal corporation payable within a period not exceeding three years, * * *."

While the proceedings through which the certificates of indebtedness were authorized makes no mention of this section or the act in which it is contained, the plaintiffs contend that their validity is established thereunder and that the funds were in part at least used for the beneficent purpose of this relief enactment.

Section 35 of this act, however, provides that " this act shall not apply to a city or county unless and until the governing board thereof shall adopt a resolution accepting its provisions and shall file, on or before November sixteenth, nineteen hundred and thirty-one, a certified copy of such resolution with the administration." No such action on the part of the governing board of the defendant is alleged in the complaint, or asserted upon the argument. In fact, no reference to its limited application was made. Whether the certificates of indebtedness are valid obligations of the defendant under the provisions of this law depends, of course, upon the law being operative within the city of Kingston at the time their issuance was authorized and whether the funds were raised and devoted to the purpose which the loans authorized by section 10 of the act contemplated. This issue must abide a trial of the facts.

To summarize, it is my judgment that, unless upon the trial these loans can be established to have been made by the defendant for permanent improvements and betterments or for the purpose under the provisions of chapter 798 of the Laws of 1931, extraordinary session, or for both, the certificates of indebtedness are not valid and subsisting legal obligations of the defendant. Such issues require a trial of the facts, and summary judgment must be denied.

Under section 20, subdivision 5, of the General City Law, every city has the power " to pay or compromise claims equitably payable by the city, though not constituting obligations legally binding on it, * * *."

If the trial herein should result in a judgment that these certificates of indebtedness are not legal obligations of the city, it is evident that their payment is, nevertheless, a moral obligation of the defendant.

Square dealing, equity and fairness do not justify the city to become so enriched from the funds of savings and other banks of which it has had the fruits and its taxpayers the benefits, without assuming the equitable obligation of repayment. The recognition of the equity and justice of the claim of the plaintiffs to be reimbursed would then rest in the consciences and discretion of the city officials charged with the power to authorize the payment of equitable claims under section 20 of the General City Law. The exercise of that discretion has been upheld by the courts. (*Matter of Shaddock* v. *Schwartz*, 246 N. Y. 288.)

Orders may be entered denying the motions of plaintiffs, with ten dollars costs in each case.