CITY OF BUFFALO, Respondent-Appellant, *v.* J. W. CLEMENT COMPANY, INC. (Correct Corporate Name, J. W. CLEMENT COMPANY), Appellant-Respondent.

Fourth Department, February 23, 1973.

*Falk, Twelvetrees, Johnston & Siemer* (*J. Clement Johnston* of counsel), for appellant-respondent.

*Anthony Manguso, Corporation Counsel* (*John P. Egan* of counsel), for respondent-appellant.

DEL VECCHIO, J. P.  This condemnation case is now before us after a second trial following a remand by the Court of Appeals. At the first trial in 1968 defendant, owner of premises ultimately taken by the City of Buffalo in connection with an urban renewal plan, received a substantial award predicated on the theory that there had been a *de facto* taking of the property in 1963. When the case came to us we affirmed the finding of a *de facto* taking, modified the award in some details and as modified affirmed, and remanded the case for a determination as to an extra allowance and costs and disbursements sought by the owner (*City of Buffalo* v. *Clement Co.*, 34 A D 2d 24).  Cross appeals to the Court of Appeals from the judgment entered after the trial court's determination on remand were taken by the owner and by the city.  The Court of Appeals (28 N Y 2d 241), among other modifications, reversed the finding of a *de facto* taking, concluding " there was no appropriation which would permit an award of damages prior to the *de jure* taking " (p. 257), and remanded the case for a new trial " on the question of proper valuation " (p. 266), since " as the defendant offered no evidence of value in 1968 based upon market data nor did the city offer any valid appraisal evidence, we lack competent evidence upon which an award could be fashioned." (p. 258).

Following the second trial in 1972, at which both parties treated the time of trial as the time of taking for the purpose

of valuation under the Buffalo City Charter, the trial court made an award based on its finding of "market value of the property as of May, 1972, had it not been subjected to the debilitating effect of the threat of condemnation which was caused by the City." The question determinative of this appeal is whether the record contains evidence legally sufficient to support the award. In our view, it does not, and a third trial will be required in order that the directive of the Court of Appeals may be complied with.

The property is located at 227–265 Erie Street in the City of Buffalo with a frontage of 436 feet on the street and extending north to a navigable waterway on which it has a frontage of 523 feet. With both dock and rail facilities at one time, the premises were improved by a structure built in 1929 as a freight and passenger terminal, thereafter used as a warehouse, and subsequently modified after Clement became owner in 1946 to serve as a printing plant. Modifications included enlargement by the addition of building wings, installation of a new concrete floor, and elevation of a portion of the roof. A more extended description of the property, the owner's business operation, and the events preceding the *de jure* taking of the premises is contained in the opinions written after the first trial of the action; since those details, except as will be referred to hereafter, have no bearing on the decision we are making, they are not repeated here.

The award we are now reviewing includes a sum of $212,000 attributed to the land taken. This figure is within the range of land values fixed by the experts who testified for both sides, and their opinions were supported by market data relating to sales of comparable properties from which they drew their conclusions. We find no reason to disturb the trial court's determination as to this aspect of the case. The amount of $869,819, expenses of moving equipment to a new plant constructed when the condemnation of the Erie Street property appeared imminent, was confirmed by the Court of Appeals as a proper item of recovery on the appeal after the first trial and is not disputed by the city.

The balance of the award, representing the value of improvements, including machinery which could not economically be moved, is not sustainable on the record.

The owner's valuation expert submitted an appraisal which estimated a value for improvements (excluding the unmoved machinery) by only two of the three accepted methods of valuation — the cost of reproduction less depreciation and the eco-

nomic, or capitalization, approach. The first of these methods was not appropriate to the structures with which we are concerned. As this court has said: "Reproduction cost as a measure of value is limited to a specialty which is a building designed for a unique purpose and which produces income only in connection with the business conducted in it (*Matter of City of New York [Lincoln Sq. Slum Clearance Project]*, 15 A D 2d 153, 171, affd. 12 N Y 2d 1086; *Matter of City of New York [First Elephant Estates-La Hermosa Church]*, 17 A D 2d 317, 319, 320). If it would produce income if leased for some appropriate use it is not a specialty and it must be appraised by the economic approach (capitalization of net income) (*Matter of City of New York [De Nigris-De Nigris Realty Corp.]*, 20 A D 2d 42)" (*Samuelson v. Salamanca Urban Renewal*, 34 A D 2d 369, 370). Despite the testimony offered by the owner's witnesses that, by its modifications, the building on the condemned site had become a special purpose building — i.e., one especially suited for use as a printing plant — it did not, in our view, rise to the standard of a specialty such that its value could be fixed by its depreciated cost of reproduction. The owner's appraiser testified that, once the property was vacated, there was nothing to prevent its use as a warehouse — a use to which it had been devoted prior to its purchase by Clement. That testimony makes applicable the language of *Matter of City of New York (West Side Renewal)* (27 A D 2d 243, 247), where it was held error to value a property as a specialty since "the converted building was reconvertible to the old use, or to a new use capable of yielding rental income." After the first trial we declined to hold that the property was a specialty (34 A D 2d 24, 32–33) and it appears that the Court of Appeals likewise determined that Clement's printing plant was not a specialty, which could be valued by the depreciated reproduction cost method, from the fact that the record on the first trial of this action, containing extensive proof of valuation by this method from experts for both parties, did not comprise "competent evidence upon which an award could be fashioned" (28 N Y 2d 241, 258).

As the second method of valuing improvements, the owner's appraiser employed the capitalization of income, or economic approach. In so doing, he used an economic rent based on market data rentals of other, comparable properties, which is an accepted procedure when property is owner-occupied (*Rochester Smelting and Refining Co. v. State of New York*, 38 A D 2d 674). A difficulty arises, however, from the fact that the

documentation, factual basis, and computations involved in the witness's capitalization process were the same as those used and included in the evidence at the first trial and held by the Court of Appeals insufficient on which to base an award. Although the inadequacies of the proof by this method were not detailed by that court, we call attention to the failure of the expert to reduce the economic rent by an allowance for operating expenses and fixed charges (*Svoboda* v. *State of New York,* 28 A D 2d 1056) and his failure to make adjustments between the comparables relied on in determining the economic rent and the subject premises (*Woods* v. *State of New York,* 36 A D 2d 572; *Geffen Motors* v. *State of New York,* 33 A D 2d 980).

The city's evidence of value of the structural improvements was also inadequate. Contending that this is not a proper case for application of the " condemnation blight " theory, it offered the opinions of two appraisers that the building was totally worthless because of its deteriorated condition in May, 1972.

The Court of Appeals has already stated that in assessing damages " the claimant's property should be evaluated not on its diminished worth caused by the condemnor's action, but on its value except for such ' affirmative value-depressing acts ' of the appropriating sovereign " (28 N Y 2d 241, 258). Despite this instruction, the city's appraisers testified that they appraised the building as they found it in 1971, " regardless of any adverse effect that any action by the city might have had on it ", and that, although at the first trial the valuation had been made " without the economic effect of the pending condemnation " for " the only way to give an honest opinion of the value of it was prior to the time when there was any buildup of adverse effect ", the appraisal at the second trial was of a demolished building. No attempt was made by these experts to appraise it as it might have been at the time of the taking but for the debilitating threat of condemnation. The justification for the appraisers' refusal to take into consideration any adverse effect from action by the city lay in their contention that there had been none. This contention, which was rejected by the trial court, is unsupportable in face of testimony of " affirmative value-depressing acts " by the city and of their devaluating influence on the subject property (*City of Buffalo* v. *Irish Paper Co.,* 31 A D 2d 470, 476, affd. 26 N Y 2d 869). The evidence indicates, as it did upon the first trial (34 A D 2d 24, 27), that the threat or cloud of condemnation has hung over the waterfront redevelopment area and over Clement's property since 1954, that the city delayed commenc-

ing this proceeding until 1967 and thereafter delayed "taking" the property until June 13, 1972, that the city issued no building permits for new construction in the waterfront area from 1963 until recent development of the area and only one repair permit was issued to the knowledge of the city's Director of Buildings, that the city began acquiring properties in the area in 1962, that following such acquisition the structures were demolished or were allowed to stand vacant "for a long time" so as to become the subject of extensive vandalism, and that the city acquired all railroad property in the location, eliminating rail service formerly available to Clement's property. After the first trial we and the Court of Appeals noted that the city had begun lowering property assessments in the area as early as 1959 (34 A D 2d 24, 27; 28 N Y 2d 241, 249). Clement's appraiser stated that the locale had been subject to condemnation blight since 1963, and that no sales have taken place in the area except to the city; one of the city's appraisers conceded that there had been a depressing influence imposed by the announcement of the impending condemnation. On this record the failure to attribute at least some of the building's devaluation to condemnation blight and to arrive at a valuation with that factor as a consideration represents a failure to comply with the directive of the Court of Appeals respecting assessment of damages (28 N Y 2d 241, 258).

Since neither side has cured the deficiencies in proof of valuation pointed out by the Court of Appeals and the record is inadequate to support the award for structures and improvements made by the trial court, a new trial is required at which proper proof of value of the improvements may be presented. The proof should also relate to the value of the unremoved machinery left in the premises and for which the Court of Appeals has determined compensation must be made (28 N Y 2d 241, 262). The trial court's award of $152,700 for this machinery may not stand, since the highest depreciated value testified to at the trial was $118,343.

In addition to the award of $2,130,519 for land and improvements taken, which has been discussed at length, the trial court found that the owner "is not entitled to recover for the loss of rental property pending the *de jure* taking", over a claim that the constitutional guarantee of "just compensation" entitles it to recover, in addition to pre-blight capital value, its loss of the pre-blight rental value of the property. In view of the holding in *Niagara Frontier Bldg. Corp.* v. *State of New York* (33 A D 2d 130, affd. 28 N Y 2d 755), which affirmed a reversal of

an award of lost actual rentals following a manifestation of an intent to take the property or a threat to condemn, we are constrained to affirm this finding. We find no New York authority that sanctions such a recovery.

Finally, the trial court found that the owner was entitled to $3,000 costs pursuant to CPLR 8303 and was entitled to tax the fees of its expert witnesses. It declined to find that there had been a *de facto* taking at any time, declined to award interest from April 1, 1963 upon the award of moving expenses, and declined to award taxes or any other expenses of maintaining the property prior to the taking. We find no error in these determinations.

For the reasons stated, the judgments should be modified to the extent that the cause be remanded for a new trial on the question of proper evaluation of the improvements including the irremovable fixtures, and as modified affirmed.

MARSH, WITMER, MOULE and HENRY, JJ., concur.

Judgments unanimously modified on the law and facts to the extent that the cause is remanded for a new trial on the question of proper evaluation of the improvements including the irremovable fixtures, and as so modified affirmed, without costs.