J. Robert Lynch, J.
This proceeding to review the real property tax assessments of four parcels of the petitioner’s property was brought under one petition rather than as four separate proceedings. Our decision, dated May 29, 1976, held that the petitioner had failed to prove that two of the parcels had been overvalued and that a third parcel was overvalued but less than half of the overvaluation claimed by the petitioner before the assessors. We held that the decision as to those parcels would not give rise to a right in the petitioner to costs and disbursements. Since we held that the fourth parcel was overvalued by more than one half of the overvaluation the petitioner claimed before the assessors, an award of costs and disbursements to the petitioner was mandated.
With the judgment of July 1, 1976, the county clerk taxed a bill of costs of $83,337.85 being $150 for costs and $83,187.85 of disbursements. The respondents have objected to all but $9 *706 of the disbursements and seek now an order of retaxation before the clerk (CPLR 8404).
The specific items objected to read as follows:
Stenographers’ fees CPLR 8002, 8301 $3,298.00
Attendance of witnesses: CPLR 8001 (subs [a], [b], [c]), 8301 (subd [a], par 1)
Peter A. Hopkins, Jr. 757.20
Hugh A. McMullen, III 2,860.19
The Manufacturers Appraisal Co. Appraisal fee 75,000.00
Robert Jones 806.73
Douglas H. Morrison 456.73
The respondents claim, and the petitioner does not deny, that these disbursements accrued for the entire trial rather than only for that portion of it relating to the proof on the one parcel that gave rise to the right to the taxation of costs and disbursements. The respondents contend also that the cited sections of the CPLR do not authorize stenographers’ fees for the transcription of trial minutes as of course, without specific court order. They object that the appraisal fee and the specified witnesses were hired experts, not subpoenaed witnesses, and that their fees are not taxable as disbursements under the cited sections of the CPLR, but only by specific court order under CPLR 8301 (subd [d]). The respondents generally object that an award of disbursements as claimed would in effect grant the petitioner disbursements for the three parcels which the law denies and this court in its decision refused.
Subdivision 1 of section 722 of the Real Property Tax Law provides that, in a judicial review of a tax assessment, disbursements shall not exceed those taxable upon the trial of an issue of fact in Supreme Court, except that "if evidence has been taken there shall be included in the taxable costs and disbursements the expense of furnishing the court or referee with a copy of the stenographer’s minutes of the evidence taken”.
Before the trial commenced, both court and counsel acknowledged that the length of the trial and the complexity of the case would require the transcription of the minutes, if not for the assistance of counsel, certainly for the use of the court in rendering its decision. Court and counsel also acknowledged that the usual procedure — ordering the minutes transcribed after the trial had concluded — would entail a wait of months for the transcription to be completed. This would mean that the court would have to commence its determination when memory had been dimmed by passage of time and more *707 interest charges would, accrue on any award to the petitioner. The delay would have been further extended had the attorneys wished to prepare briefs or proposed findings from the minutes for submission to the court.
To expedite the decision, court and counsel agreed that there should be daily transcription of the minutes, which would involve the use of at least two stenographers. We were unable to arrange this unless we could guarantee that the stenographers would be able to sell three copies of the minutes. Consequently the petitioner and respondents each agreed to buy a copy and the court ordered the county to furnish it with a copy.
The petitioner paid $3,298 for its copy of the minutes. Regardless of the use the petitioner may or may not have had of these minutes and despite the county’s having paid for the court’s copy, the petitioner’s expense was a cost of furnishing the court with the minutes, because the court would have not been provided with a copy under our arrangement unless the petitioner had incurred this expense. Since we find the stenographers’ fees authorized by subdivision (1) of section 722 of the Real Property Tax Law we are not called upon to decide whether they are taxable under CPLR 8301.
In determining the amount of the stenographers’ fees that are taxable, equity dictates that the petitioner should not be able to recover disbursements engendered by the trial of those parcels upon which it did not succeed in obtaining a right to costs and disbursements. (It should be noted that if we had added together the four claims of the petitioner before the assessors and compared the sum with the sum of the four valuations found by the court, no bill of costs would have been awarded.) The petitioner cannot use its success on one parcel to recover disbursements applicable to the other three.
It is our judgment that 50% of the record is attributable to parcels 1 and 2, 15% to parcel 3 and 15% to parcel 4, the one giving rise to the right to costs. We estimate that 20% of the record is attributable to general matter which would have been required for each parcel had they been tried separately. We find, therefore, that the petitioner is entitled to tax as a disbursement for stenographers’ fees, 35% of $3,298 or $1,154.30. (See People ex rel. Envoy Apts. v Miller, 165 Misc 943.)
The petitioner would justify the taxability as disbursements of the full fee it paid each of its expert appraisal witnesses *708 under CPLR 8301 (subd [d]) and also under CPLR 8301 (subd [a], par [12]) as it claims the latter has been expanded by case law. It would also categorize the $75,000 paid for the appraisal reports entered into evidence drawn up by its appraisal company (the employer of the expert appraisal witnesses) as for an expert witness and for the purposes of this holding, we shall do the same.
CPLR 8301 (subd [d]) is not relevant to this issue. It neither establishes a category of disbursements nor does it enlarge the category of disbursements made taxable by other sections. Its only purpose is to increase the amount of the disbursements taxable where taxability is otherwise authorized.
The petitioner’s dependence on this section is not pinned on any case law but solely on. a quotation from 8 Weinstein-KornMiller (NY Civ Prac, par 8301.37), "The Advisory Committee’s purpose clearly is furthered by bringing the fees paid to printers and expert witnesses within the ambit of CPLR 8301 (d).” We have found no case that has construed this section to grant taxability itself to expert witness fees and, holding the Weinstein-Korn-Miller language up to the wording of the statute, it is apparent that that was not their intention. The most that can be said for the quotation is that if expert fees are taxable (and they sometimes are, as we shall see), they should be taxed as the statute holds at a fair and reasonable amount rather than as they may be arbitrarily set by statute.
If the fees to these experts are to be taxed beyond the amount ordinarily taxable for the attendance of any witnesses, authorization must be found in CPLR 8301 (subd [a], par [12]), "such other reasonable and necessary expenses as are taxable according to the course and practice of the court, by express provision of law or by order of the court”. Basically, this authorization invokes the discretion of the court (Van Patten v Sylvia, 76 Misc 2d 899) but, with the exception of a few cases where discretion has dictated otherwise, the courts historically have refused to permit the taxation of expert witness fees beyond the ordinary witness fee (Mark v City of Buffalo, 87 NY 184; Cooper v Dubow, 41 AD2d 843; Hempstead Bank v Ryan, 42 AD2d 779; People ex rel. Envoy Apts. v Miller, 165 Misc 943, supra; Kiev v Seligman & Latz of Binghamton, 47 Misc 2d 364; Van Patten v Sylvia, supra).
The petitioner has seized upon the exceptions to the general rule, but we find them inapplicable to this proceeding.
In Janusz v Fallon (61 Misc 2d 608), "the allowance of the *709 expert’s 'fee’ was by way of sanction against the unreasonable refusal of the defendant to stipulate to the easily ascertainable and apparently uncontradicted value of the plaintiff’s property damage. The cost of producing the witness to supply that proof was allowed by the court, understandably, to discourage such practice. Such was a proper exercise of discretion. Even there, the court did not allow the full $100 cost of producing the expert but exercised discretion and only allowed $50 as a taxable disbursement” (Van Patten v Sylvia, supra, p 900).
In Muffoletto v Rivera (54 Misc 2d 114), the court exercised its discretion to affirm the taxability of the cost of obtaining a photograph of the scene of an automobile accident because the introduction of such photographs had become "the practice in the area” in lieu of maps or surveys. At the same time it refused to permit the expert witness fee of the photographer to be taxed.
The petitioner has relied on two other cases, both condemnation actions, as authority for the taxation of expert witness fees (Mechanicville Urban Renewal Agency v Bruno, 85 Misc 2d 159; City of Buffalo v Clement Co., 41 AD2d 41). An examination of the rationale underlying these holdings limits their application to condemnation cases.
In City of Buffalo the court stated only that it found no error in the trial court’s holding that the owner of the condemned property was entitled to tax the fees of its expert witnesses. Since it did not explicate its reasons, we must find them in other condemnation cases.
In Mechanicville, the defendant seeking to tax its expert witness fees relied upon City of Buffalo while the plaintiff relied upon the historic holding represented by Van Patten and Hempstead Bank. The court noted that none of the plaintiff’s cases were condemnation actions and that City of Buffalo was. It determined to follow the latter because it felt that there were policy reasons for setting condemnation actions apart from the general rule. "Condemnation proceedings should be distinguished from other actions wherein witness fees are statutorily determined” (p 160). The court reasoned that the constitutional imperative of just compensation for condemned private property should require that the owner be able to recover the expense of proving the value of the property, especially since he is "often required by circum *710 stances to litigate to dispute a low estimate made by the plaintiffs appraisers” (p 160).
Another cogent reason for distinguishing condemnation cases is set forth in City of Yonkers v Zedler (118 NYS2d 70). There the court held that taxing of expert witness fees had specific authorization by law, in that instance by the Yonkers City Charter but ordinarily under the additional allowance umbrella of section 16 of the Condemnation Law. There is no such special authorization for tax reviews; the costs are specifically tied to those usual for trials in the Supreme Court (Real Property Tax Law § 722, subd 1).
We see no reason in the rationale of the condemnation cases to warrant their extension to tax reviews nor have we found a case in which this has been done.
The petitioner also appeals for us to exercise our discretion contrary to the historic rule by arguing that it should recoup all of its expert fees because it is limited by law to 3% annual interest on any award it might receive. We see no connection between the two, but if equities of this type are to be balanced, we must point out that a petitioner in a tax case is by law free of any threat of having a bill of costs taxed when it fails to prove its case.
In summary, the disbursements objected to should be taxed as follows: the stenographers’ fees, $1,154.30; attendance of witnesses Peter A. Hopkins, Jr., Hugh A. McMullen III, Robert Jones and Douglas H. Morrison, $2 a day for each day of each witness’ attendance plus mileage at 8 cents a mile for one round trip for each from the place where he would have been subpoenaed had that been necessary to Syracuse, with no mileage fee if travel was wholly within the City of Syracuse (CPLR 8001, subd [a]; Davis v McDaniel, 60 Misc 2d 390).
The clerk is directed to retax the bill of costs in accordance with this memorandum.