In the Matter of the CITY OF JOHNSTOWN, Petitioner, *v.* WATER POLLUTION CONTROL BOARD OF THE STATE OF NEW YORK, Respondent.

Third Department, January 25, 1961.

*A. H. Pulsifer* and *Mario H. Costa* for petitioner.

*Louis J. Lefkowitz, Attorney-General (Richard H. Shepp* of counsel), for respondent.

BERGAN, P. J.   In this article 78 proceeding by the City of Johnstown to review an order of the Water Pollution Control Board requiring the discontinuance of the use of Cayadutta Creek for the discharge of untreated sewage, the main question is whether the record shows that the use made of the creek constitutes " a public nuisance as defined by the Penal Law ".

The Cayadutta Creek has been classified by the respondent board as Class " F ", which would permit the creek to be used for disposal of sewage and waste if the floating solids, oil and sludge deposits or " odor producing substances " do not " cause a public nuisance as defined by the Penal Law ".

The Penal Law, which in this respect has been said to be declaratory of common law (*People* v. *Kings County Iron Foundry,* 209 N. Y. 207, 210) defines a public nuisance as an act which " [a]nnoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons " (Penal Law, § 1530, subd. 1).

A group of witnesses testified to noxious odors emanating from the stream below the City of Johnstown.   These witnesses lived at various distances from the stream and at sufficiently distributed areas to warrant the conclusion that the noisome odors emanating from the stream were due to Johnstown's sewage; and that the condition was so widespread in area and effect as to annoy and endanger the comfort, repose and health of a considerable number of persons within the Penal Law definition.

It would thus exceed the lawful right of the city to use the Class " F " stream for sewage disposal.   From the testimony of these witnesses it is a fair inference that a " considerable number " of persons in the area of the stream were affected by the

nuisance. (*Bohan* v. *Port Jervis Gaslight Co.,* 122 N. Y. 18; *McCarthy* v. *Natural Carbonic Gas Co.,* 189 N. Y. 40; cf. *People* v. *Rubenfeld,* 254 N. Y. 245.)

The city did not factually controvert this evidence taken before the board, although it was represented by counsel who took part in the proceedings and cross-examined witnesses.

The city argues also that the board had no power to classify Cayadutta Creek because it is a nonnavigable stream the title of which is in private riparian owners and that the power of the board to classify is limited to " waters of the state " (Public Health Law, § 1208, subd. 1; § 1209, subds. 1, 2; § 1220).

But it has become settled that " waters of the state " include all fresh water in streams, public or private (Public Health Law, § 1202, subd. [b] ; cf. *Matter of City of Utica* v. *Water Control Bd.,* 5 N Y 2d 164, 168).

That the classification and order were interference with a " property right " of the city and hence unconstitutional is likewise untenable since such rights do not attach to water itself and in any event are required to yield to public health and public safety (*Matter of City of Utica* v. *Water Control Bd., supra*).

The objection that the city may not be able to raise the necessary money to execute a program for a sewerage treatment works within the time fixed by the order, even if it be assumed that this will surely occur, does not require that the order itself be annulled. The inability of the city to finance the plant is not in any event conclusively demonstrated.

The city may apply to the board on a proper showing for an extension of time upon clearly showing financial inability to comply with the order. (Public Health Law, § 1224.) On such an application the board is required to act fairly within the frame of its statutory power and, of course, the resulting order would itself be reviewable.

The determination should be confirmed, without costs.

Coon, Gibson, Herlihy and Reynolds, JJ., concur.

Determination confirmed, without costs.