AVIE KINLEY et al., Respondents-Appellants, *v.* ATLANTIC CEMENT Co., Appellant-Respondent.

Third Department, November 15, 1973.

*Ainsworth, Sullivan, Tracy & Knauf* (*Thomas F. Tracy* of counsel), for appellant-respondent.

*E. David Duncan* for respondents-appellants.

KANE, J.   These are cross appeals from a judgment of the Supreme Court, entered February 20, 1973 in Albany County, upon a decision of the court at a Trial Term in favor of plaintiffs.

Six years ago this action, together with seven others, was tried in Supreme Court, Albany County, and resulted in a determination that the defendant, a cement manufacturing company, created a nuisance insofar as plaintiffs' lands were concerned.   It was found that the granting of a permanent injunction would cause an intolerable hardship upon the defendant and public as well, and damages were granted to each plaintiff in various specific amounts up to the time of trial, with the effect that future successive actions at law could thereafter be maintained if the nuisance continued (*Boomer* v. *Atlantic Cement Co.,* 55 Misc 2d 1023).   On appeal we affirmed (*Boomer* v. *Atlantic Cement Co.,* 30 A D 2d 480), but the Court of Appeals reversed (*Boomer* v. *Atlantic Cement Co.,* 26 N Y 2d 219) and remitted the cases "to Supreme Court, Albany County to grant an injunction which shall be vacated upon payment by defendant of such amounts of permanent damage to the respective plaintiffs as shall for this purpose be determined by the court."   In reaching this result the Court of Appeals overruled the doctrine that where a nuisance has been found and where there has been any substantial damage shown by the party complaining, an injunction will be granted.   In an advisory fashion, the Court of Appeals noted (p. 228) that " Although the Trial Term has found permanent damages as a possible basis of settlement of the litigation, on remission the court should be entirely free to re-examine this subject.   It may again find the permanent damage already found; or make new findings."

In April, 1971 only three of the seven cases remained unsettled, and they were tried to conclusion on the damages issue only with expert testimony as to respective values in 1971.

The proper rule to be applied in this case in determining the amount of permanent damages plaintiff is entitled to due to a permanent nuisance is the difference between the market value of the property before and after the nuisance (42 N. Y. Jur., Nuisance, § 61). The court below determined this amount to be $140,000 represented by a before value of $265,000 and an after value of $125,000, both as of April, 1971, and well within the range of testimony. To this amount the court added as temporary damages the sum of $35,000 for the period October 1, 1962 to June, 1967, based upon the testimony at the prior trial and in accordance with the directive from the Court of Appeals. Given latitude from the Court of Appeals, it was appropriate for the trial court to find as it did, and we find the determination of the permanent damages, present, past and future not to be excessive based upon the evidence produced. While the trial court did consider the " contract price theory " and the " special market value rule ", it rejected these approaches as punitive and inflated in value, and concluded by properly applying the fair market value rule.

We find that the granting of plaintiffs' leave to amend the *ad damnum* clause at the start of the trial (CPLR 3025, subd. [b]), the award of the additional allowance to plaintiffs (CPLR 8303, subd. [a], par 2), and the award of interest (CPLR 5001) all were within the trial court's power and discretion.

The judgment should be affirmed, without costs.

HERLIHY, P. J. (concurring). The general rule to be applied in ascertaining damages where the nuisance is complete and the damage permanent is the difference between the market value of the property before and after the nuisance as is the general rule stated in the majority opinion. However, it is apparent that the present case does not simply constitute a situation where justice requires the plaintiff to be compensated in damages for a nuisance which has somehow caused permanent damages. The judgment entered in this case gives the defendant the option of ceasing its business operation or paying a certain sum of money for which it is granted a legal servitude. Where such a situation involves an entity exercising the sovereign right of eminent domain, the requirement is that the citizen receive just compensation and under such circumstances money damages ascertained by determining the before and after market

value is entirely fair. (Cf. *Tom Sawyer Motor Inns* v. *County of Chemung*, 39 A D 2d 4, affd. 32 N Y 2d 775.) In regard to eminent domain the condemnor and the citizen are placed in the respective positions of a willing buyer and the willing seller.

In the present case the value of the servitude must be determined in the context of two private citizens, one of whom must either purchase the encumbrance upon the fee or cease operations and the other being placed in a position of not refusing to accept a court adjudged value for the servitude. Regardless of phraseology it is certain that the determination of the courts in the present case to serve the ends of justice by not imposing a mandatory injunction necessarily results in a permanent derogation of the title in fee simple absolute to the plaintiffs' premises. The object of the entire proceeding is to arrive at an *equitable* determination not solely as to rights of the parties in regard to an injunction but also to fairly compensate the plaintiff for such damages as have been suffered. In this particular case the plaintiff not only is entitled to recover for such damages as he has actually suffered but he must be fairly compensated for the imposition of the servitude.

As noted hereinabove, the parties are private citizens and it would be unrealistic to assume that the defendant could acquire a servitude of the present nature by simply paying the price which a willing seller would accept. The present record contains proof offered by the plaintiff of a sale which demonstrated the ability of a seller to obtain the price of $32,500 for a small parcel of land which only the year before had been purchased for $3,438 when the buyer was an adjoining landowner needing the land for business expansion purposes. While such sales are sometimes referred to in a derogatory manner as "hold-ups", there is nothing which would seem immoral or illegal in assessing value as between private citizens upon a consideration of business facts. The plaintiffs have not created the situation which required the necessity for the defendant to obtain a legal interest in the fee simple absolute title of the plaintiffs' premises. While the public interest may dictate that the defendant be afforded an opportunity to acquire a servitude, there is no apparent reason to assume that the purchase is being either made by or on behalf of the public and, accordingly, the value of the servitude should reflect the private interests of the parties to this lawsuit.

Upon the present factual record the value found by the trial court is neither so excessive nor inadequate as to be shocking and it is supported by the inferences from the expert opinion

and sale adduced at the trial and is in accordance with the rule of damages as enunciated by the Court of Appeals.

Accordingly, I concur in the affirmance.

STALEY, JR., SWEENEY and REYNOLDS, JJ., concur; HERLIHY, P. J., concurs in a separate opinion in which STALEY, JR., SWEENEY, KANE and REYNOLDS, JJ., concur.

Judgment affirmed, without costs.