OPINION OF THE COURT
Edmund L. Shea, J.
This is a motion made pursuant to CPLR 3211 (subd [a], par 7) to dismiss the fourth, fifth and seventh causes of action of an amended complaint. The plaintiffs cross-move pursuant to CPLR article 9 for an order allowing the action to proceed in class form and determining that notice of the pendency of the action need not be given to the members of the class.
The underlying action seeks equitable relief and monetary damages for alleged injuries arising from the construction, operation and maintenance of a municipal sewage plant in the *759 Cities of Johnstown and Gloversville, New York. The plaintiffs charge that through improper construction and maintenance, sewage leaks from the system at various points into lands of the plaintiffs; that on occasion untreated sewage is deliberately dumped into the Cayadutta Creek in Gloversville, and that following treatment some substances are discharged into the air, Cayadutta Creek or onto land. As individual damages, the plaintiffs allege that "they must smell the foul, annoying and discomforting orders; they must remove from their properties matter discharged from the facilities or repair the damage caused thereby; they must subject their persons to the ever present risk of illness, disease and discomfort; and they have had the fair market value of their real properties diminished.”
As a result of prior motions, a consent order dated May 5, 1978, dismissed the sixth cause of action.
AS TO THE FOURTH CAUSE OF ACTION INVERSE CONDEMNATION
The defendants assert with respect to the fourth cause of action which alleges a taking by inverse condemnation that plaintiffs fail to state a cause of action in that they have not alleged physical entry or ouster tantamount to an appropriation. The essence of the defendants’ argument is that plaintiffs are relegated to seek recovery for temporary or permanent damages under the theories of trespass, negligence or nuisance, but cannot recover for a taking in the absence of a de facto appropriation.
Traditionally, the courts of this State have recognized inverse condemnation as a procedural vehicle for granting damages to an injured party where an entry cloaked with the powers of eminent domain has so interfered with the property rights of a landowner that it amounts to a compensable taking. The need for this vehicle arises in context of the situation where injunctive relief is sought — as is the situation here — but which cannot issue because of the equities of the comparative injuries — which may be the case here. It is the practical equivalent of a condemnation. (Ferguson v Village of Hamburg, 272 NY 234, 240; 28 NY Jur, Injunctions, § 71, p 398.)
Historically, this equitable remedy has been applied to the elevated railway cases which involved the impairment of adjoining landowners’ appurtenant easements of light and air *760 (see, e.g., Pappenheim Metropolitan El. Ry. Co., 128 NY 436); to cases involving the diversion of waters in contravention of riparian rights (Ferguson v Village of Hamburg, supra; Edsall v Village of Ilion, 37 AD2d 684); to situations where a riparian owner suffers damage through the pollution of a stream (Squaw Is. Frgt. Term. Co. v City of Buffalo, 273 NY 119; cf. Sammons v City of Gloversville, 175 NY 346),* which involved a suspended injunction; to one involving the diversion of subterranean waters (Westphal v City of New York, 177 NY 140); and to cases involving the mislocation of utility lines (see, e.g., Braman v Rochester Gas & Elec. Corp., 54 AD2d 174; Buholtz v Rochester Tel. Corp., 40 AD2d 283, app dsmd 33 NY2d 939). The list is by no means exclusive, but is indicative of the flexibility of the remedy.
Essential to the application of this remedy is a finding that there has been a taking in the constitutional sense. Without a de facto taking, there is no appropriation whether it be called inverse condemnation or otherwise. As was delineated in City of Buffalo v Clement Co. (28 NY2d 241, rearg den 29 NY2d 640, app after remand 40 AD2d 753, app dsmd 31 NY2d 958, app after remand 41 AD2d 41, app after remand 45 AD2d 620):
"[T]he concept of de facto taking has traditionally been limited to situations involving a direct invasion of the condemnee’s property or a direct legal restraint on its use * * * and to hold that there can be a de facto appropriation absent a physical invasion or direct legal restraint would, needless to say, be to do violence to a workable rule of law.” (City of Buffalo, 28 NY2d 241, 253, supra.)
"[I]t is clear that a de facto taking requires a physical entry by the condemnor, a physical ouster of the owner, a legal interference with the physical use, possession or enjoyment of the property or a legal interference with the owner’s power of disposition of the property.” (City of Buffalo, 28 NY2d 241, 255, supra.)
It is important to note, however, that City of Buffalo v Clement Co. (supra) involved a "condemnation blight” case where there was a total absence of ouster or direct interference of the plaintiffs interest. Similarly, in French Investing Co. v City of New York (39 NY2d 587) the rezoning of two *761 private parks to public parks was held not to amount to a taking because of the absence of factors of governmental displacement of private ownership, occupation or management, but was found to be an unconstitutional exercise of the police power. These cases, however, are not relevant to a complaint which alleges that foul and sickening odors and materials are discharged from the sewage treatment facility into the lands of the plaintiffs thus requiring the plaintiffs to remove those materials and greatly diminishing the value of their property.
More illustrative in this context are the airplane overflight cases. In the landmark decision of United States v Causby (328 US 256) the United States Supreme Court recognized that through regular overflights the utility of the plaintiff’s land as a chicken farm was destroyed thereby substantially diminishing the value of his property which resulted in a compensable taking. In this State, airplane overflight is said to state a cause of action for de facto taking where the overflight substantially diminishes the value of the property in question. (Cunliffe v County of Monroe, 63 Misc 2d 62.) In that case, the court dismissed the action, not for a failure to state a cause of action, but for the failure of proof.
Unpersuasive are the defendants’ arguments which imply that a cause of action for "inverse condemnation” is unnecessarily redundant of the nuisance cause of action because the nuisance cause of action could result in an award of damages for permanent nuisance. This environmental litigation, which is still in its embryonic stages, has yet to define the parameters of the defendants’ wrongdoing. Taking the plaintiffs’ allegations as true, as this court must, on this test of sufficiency the damages are severe to say the least, and it is impossible at this stage to say that the plaintiffs have not stated a cause of action which depends on the nature and extent of the damages. Pertinent in that respect is a Maine decision wherein the appellate court was faced with alleged causes of action in nuisance, trespass and a taking without just compensation arising out of purported damages resulting from runoffs of salt used for snow removal. (Foss v Maine Turnpike Auth., 309 A2d 339 [Me].) In reversing a dismissal of the complaint, upholding all of the alleged causes of action, the court (supra, pp 344, 345) reasoned that there are two conditions under which the plaintiffs would be entitled to damages:
*762 "The first condition would exist if plaintiffs’ property had been injured by an act of defendant that was either legislatively unauthorized or performed in an unreasonable or excessive manner. In such a situation, the activity must be treated in the same manner as if private parties only were involved. Moreover, in such a situation injunctive relief might be made available to plaintiffs to the extent that the salting was unauthorized or excessive.
"The second condition, alternatively, would exist if plaintiffs’ property had been injured by an act of defendant that was both authorized and reasonably performed, but which resulted in a constitutional 'taking’ of the property. In such a situation, plaintiffs would be entitled to the same damages as would be available to them in a proceeding in Eminent Domain. Equitable relief, moreover, would not be available, the Constitution requiring merely 'just compensation.’ ”
Here, too, damages may be found to exist because of either unauthorized or illegal action on the part of the defendants which amounts to a trespass or a nuisance, or by authorized activity legal in all respects which so greatly diminishes the value of the plaintiffs’ property that it amounts to a compensable taking. At this stage of the litigation, it is too early to tell.
Moreover, decisions in this State have recognized the existence of a cause of action for inverse condemnation in situations which state a cause of action for nuisance as well. Squaw Is. Frgt. Term. Co. v City of Buffalo (273 NY 119, supra) recognized the existence of a cause of action for nuisance and trespass, and the propriety of an inverse condemnation award citing Ferguson v Village of Hamburg (272 NY 234, supra). More recently, a cause of action for inverse condemnation was impliedly recognized in Tom Sawyer Motor Inns v County of Chemung (39 AD2d 4, affd 32 NY2d 775). That case involved a nuisance action against the county grounded upon the operation of a sewage treatment plant. On remand from a prior appeal it was determined that the damages were permanent which warranted the granting of an injunction conditional on the payment of permanent damages. On appeal, the Appellate Division, Third Department, affirmed, but modified, the interest award on the basis of section 3-a of the General Municipal Law. The court noted: "The net result of this case has been an appropriation (on occasion referred to as 'inverse condemnation’) by the defendant of an interest in the plaintiff’s property *763 to the extent of being able to waft obnoxious odors upon and over the said premises. While the condemnation power was not expressly used, the result is the same and the appropriate rate of interest would be 6%.” (Tom Sawyer Motor Inns v County of Chemung, 39 AD2d 4, 6, supra.)
Where a public entry is involved, "the requirement is that the citizen receive just compensation and under such circumstances money damages ascertained by determining the before and after market value is entirely fair.” (Kinley v Atlantic Cement Co., 42 AD2d 496, 498-499, Herlihy, P. J., concurring.) Moreover, the Tom Sawyer case (supra), as affirmed, clearly stands for the proposition that an award of damages for inverse condemnation will entitle the recipient of the award to interest on the judgment or accrued claim of 6% as opposed to the normal allowance of 3% (General Municipal Law, § 3-a; Tom Sawyer Motor Inns v County of Chemung, supra), which in and of itself is a sufficient reason to let the cause of action for inverse condemnation stand. Accordingly, the motion to dismiss the fourth cause of action is denied.
AS TO THE FIFTH CAUSE OF ACTION UNJUST ENRICHMENT
This cause of action has three separate aspects. First, the cities have been enriched by retaining sewer rents and taxes paid to obtain proper sewage disposal. Second, the cities have been enriched by not spending the money required to operate the sewage plant efficiently. Third, the cities have been enriched by dumping sewage and other substances on the plaintiffs’ property without paying for that right.
The term "unjust enrichment” does not signify a single well-defined cause of action. It is a general principle, underlying various legal doctrines and remedies. (66 Am Jur 2d, Restitution and Implied Contracts, § 3.) In this State it has been used relative to the following remedies: constructive trust, implied contract, subrogation, and indemnification. In other States it has been associated with the following doctrines and remedies: restitution, quasi contract, money had and received, subrogation, equitable lien and rescission.
All of the court’s equity powers are tapped by the doctrine of unjust enrichment. The court has broad ranging powers once it is shown that unjust enrichment has occurred. Unjust enrichment is exactly what it seems to be. It occurs where a party is enriched in an unjust manner. A defendant can be enriched by the receipt of money or its equivalent (Miller v *764 Schloss, 218 NY 400), or by being saved from expense or loss (3105 Grand Corp. v City of New York, 288 NY 178). The enrichment must be unjust under the circumstances and as between the parties. (McGrath v Hilding, 41 NY2d 625.)
Plaintiffs’ claim is to recover past payments relating to the sewage plant. "[T]he general rule is that the law affords no relief to one who, with a knowledge of the facts, makes a voluntary payment of money to one he does not owe. This rule has been applied to payments made in connection with * * * payment of taxes and assessments”. (43 NY Jur, Payment, § 79, pp 564-566.)
A payment is voluntary unless made under protest or duress. (Paramount Film Distr. Corp. v State of New York, 30 NY2d 415; Mercury Mach. Importing Corp. v City of New York, 3 NY2d 418.)
Plaintiffs have not alleged that any payment was made under protest or duress or without a knowledge of the facts. Thus, the claim of unjust enrichment based on sewer taxes and rents does not state a cause of action.
Plaintiffs allege that improper operation and maintenance of the sewage plant saved the defendants millions of dollars. They allege that the burden of the improper operation and maintenance is borne by them. Thus, the defendants have been unjustly enriched and should pay to the plaintiffs the money saved.
While unjust enrichment can occur by the plaintiff saving the defendant from expense or loss (3105 Grand Corp. v City of New York, 288 NY 178, supra), the amount of recovery is unclear. While the courts give lip service to the return of enrichment, they in fact return to the plaintiff whatever he paid out, regardless of whether the defendant was enriched in that amount or not. (See Mais v Futuristics Food, 90 Misc 2d 259; Naimoli v Massa, 81 Misc 2d 431; De Camp v Bullard, 159 NY 450.)
These cases indicate that while the courts speak of returning an enrichment, they are actually applying a quasi-contractual remedy. The defendant is not required to give the plaintiff the total benefit arising out of the plaintiff’s property, but merely return the plaintiff’s property or the reasonable value thereof. Applying this analysis to the present case, the defendants do not have to pay plaintiffs the money that they did not spend, merely return to the plaintiffs what they have received, i.e., the right to dump wastes onto plaintiffs’ prop *765 erty. The cause of action for this easement will be discussed hereafter, but the claim for the "expense saved” does not state a cause of action.
The final section of plaintiffs’ claim of unjust enrichment concerns the taking of an easement or using plaintiffs’ property for dumping waste or other substances, While the taking of a easement or using plaintiffs’ property is not explicitly alleged, it can be inferred from the allegations of the complaint. "Under the CPLR, if a cause of action can be spelled out from the four corners of the pleading, a cause of action is stated and no motion lies under CPLR 3211(a)(7).” (Siegel, NY Prac, § 208, p 245.)
The general rule is that land is not subject to the remedy of restitution. (Restatement, Restitution, § 129.) The reason for this rule is that "the action of assumpsit was inconvenient for the purpose of determining * * * title”. (Id., § 129, Comment a.) One of the exceptions to the general rule is "a person who, having the power to take the land by eminent domain for a particular purpose, has taken possession of it for such purpose but does not take the required proceedings.” (Id., § 129, subd [1].)
The general rule does not apply here for any of three reasons:
(1) The policy of the rule does not apply for one of two reasons:
(a) Title is not in question. Plaintiffs own the real property concerned and defendants do not dispute that ownership.
(b) The action of assumpsit is no longer necessarily separate from an action to determine title. "The distinctions between actions at law and suits in equity, and the forms of those actions and suits, have been abolished.” (CPLR 103, subd [a].)
(2) This action falls within the exception stated above. The Cities of Johnstown and Gloversville have the power to acquire real property by condemnation for "the construction, maintenance and operation of a sewage disposal plant.” (General City Law, § 20, subd 2.) Plaintiffs have alleged that defendants have control of the real property insofar as they dump materials onto the land. Also, since plaintiffs are still the owners of the property, the defendants have not taken the required proceedings.
Defendants argue that since plaintiffs have not alleged dispossession, this exception does not apply. The defendants *766 are in error. The exception requires the person who takes the land to take possession. The possession need not be exclusive. Only if exclusive possession by the defendant were required would the plaintiff have to be dispossessed.
(3) The rule does not apply here. This rule applies to the remedy of restitution, not to the doctrine of unjust enrichment. While unjust enrichment is closely related to restitution, it is not the same. Thus, while the remedy of restitution may not be appropriate here, that does not rule out the use of other remedies associated with the doctrine of unjust enrichment.
The courts have applied quasi contract in situations of unjust enrichment from the use of land. In De Camp v Bullard (159 NY 450, supra), while using language of trespass, the court required payment of "the value of the use and occupation, for this would be the duty of a tenant contracting upon a quantum meruit for the use, by consent”. (De Camp, supra, p 454.) This is clearly a quasi-contractual remedy.
In Bomptin Realty Co. v City of New York (276 App Div 1094), the court was presented with a claim of unauthorized dumping of waste material on property, obviously similar to the case at bar. The court applied the traditional trespass measure of damages. "The rule of damages applicable to this case is the cost of removal of the materials so deposited or the depreciation in value of the property by reason of the wrongful depositing of the same, whichever amount shall be the lesser.” (Bomptin, supra, p 1094; see, also, 61 NY Jur, Trespass, § 39.)
After comparing Bomptin Realty with De Camp, it is clear that, while quasi-contractual damages may be had against a trespasser, they are not the traditional damages for trespass. The other cases cited by the defendants rely on De Camp for the premise that an action in trespass is the same as one in quasi contract. The court in De Camp used the remedy of quasi contract to fully compensate the plaintiff. The reasoning in De Camp cannot be used to deny these plaintiffs the same remedy.
Defendants argue that no contract can be implied here since defendants are municipal corporations. They base this argument on the premise that municipalities have limited powers which can only be exercised according to the procedures set forth by statute. Defendants do not deny that they have the power to condemn an easement in these circum *767 stances (see General City Law, § 20, subd 2), rather that the proper condemnation proceedings have not been followed.
The reason behind the rule is "to ensure responsible municipal government * * * [and] safeguard against the extravagance or corruption of municipal officials, as well as against their collusion with” those employed. (Cahn v Town of Huntington, 29 NY2d 451, 455.) Nevertheless, the rule is not inviolate. "Recovery may be allowed against a municipality in quasi contract for benefits received under an unenforcible [sic] contract where the invalidity of the contract was due to a mere irregularity or a technical violation * * * but where the making of the contract flouted a firm public policy or violated a fundamental statutory restriction upon the powers of the municipality or its officers, recovery in quasi contract is uniformly denied.” (Cassella v City of Schenectady, 281 App Div 428, 432; see, also, Cahn v Town of Huntington, supra.)
All of the cases cited by the defendants involve attempts to obtain quasi-contractual recovery where express contractual recovery was denied. (Seif v City of Long Beach, 286 NY 382; Village of Fort Edward v Fish, 156 NY 363; McDonald v Mayor, 68 NY 23; Donovan v City of New York, 33 NY 290; Supervisors of Rensselaer County v Bates, 17 NY 242; Albany Supply & Equip. Co. v City of Cohoes, 25 AD2d 700; Lutzken v City of Rochester, 7 AD2d 498.) The obvious reason for this rule in these cases is to avoid allowing the defendant to thwart the requirements of the statute by appealing to the equity power of the court. The possibility of collusion between the municipality’s agent and the contracting party is too high for a court of equity to allow.
Where no unenforceable contract exists, the courts have allowed a quasi-contractual recovery against a municipality. "It is true that no express contract was entered into between the parties for the three years in controversy; but the water was furnished by the plaintiff and accepted by the defendant during that time under the circumstances in which the law will imply a contract to pay what the water was fairly and reasonably worth for the period.” (Port Jervis Water Co. v Village of Port Jervis, 151 NY 111, 117; see, also, People ex rel. City of New York v Queens County Water Co., 232 NY 277; Staten Is. Water Supply Co. v City of New York, 144 App Div 318; North Riv. Elec. Co. v City of New York, 48 App Div 14.) These cases may be narrowly read to apply only to emergency situations or a technical mistake in the contract *768 procedure. This court, however, interprets them as stating that the statutory procedure is a bar to recovery only where using implied contract would thwart the purpose of the statute. "Many cases may be found wherein the salutary rule is announced that the statutory provisions as to the manner of making a contract binding upon the city must be complied with and limiting the power of the city and its officers. But, on examination, these cases will be found to be instances where an attempt has been made to ignore or evade the statute or to enter into a contract ultra vires or one which the officers had no right or power to make.” (North Riv. Elec. Co. v City of New York, 48 App Div 14, 22, supra.)
Thus, it would appear that the cases cited by the defendants stand for the proposition that contracts made in contravention of statute will not be enforced in law or equity. There is no contract involved here. There is no violation of statute. Cities have the power "[t]o take * * * real * * * property within and without the limits of the city * * * and also to acquire * * * real * * * property within the limits of the city for any public or municipal purpose” (General City Law, § 20, subd 2), and "to pay or compromise claims equitably payable by the city, though not constituting obligations legally binding on it”. (General City Law, § 20, subd 5; emphasis added; see, also, People v City of Schenectady, 186 Misc 385; Boland v City of Niagara Falls, 178 Misc 125.) These powers are not limited by the Eminent Domain Procedure Law. (See General City Law, § 20, subd 2.)
Even if the powers of the defendants are limited in this case by the Eminent Domain Procedure Law, no purpose of that law is thwarted by allowing recovery in this case. (See, generally, Eminent Domain Procedure Law, § 101.) Any purpose which is thwarted is not due to allowing recovery, but the alleged activities of the defendants. "It is the purpose of this law * * * to give due regard to * * * the legitimate interests of private property owners * * * and the quality of the environment”. (Eminent Domain Procedure Law, § 101.)
The case at bar is also distinguishable from those cited by the defendants on the ground that it is an implied contract arising out of tort rather than contract. (See, generally, Perillo, Restitution in a Contractual Context, 73 Colum L Rev 1208-1210.) This distinction was noted in Barry v City of New York (175 Misc 712, 715, affd 261 App Div 957). "The city daily is incurring and being held answerable for tort liabilities *769 for which no appropriation has been made, and * * * subject only to specific statutory limitation, the doctrine of quasi-contract, or restitution, as the Restatement calls it, is applicable to the city.” (Barry, supra, p 715.)
Thus, the general rule denying implied contractual liability against municipalities does not apply for the following reasons:
(1) The defendants have the power to pay this claim without statutory restriction.
(2) There has been no attempt to thwart the intent of any statute.
(3) The claim is implied contract arising out of tort rather than contract.
That part of the fifth cause of action alleging that the cities have been enriched by dumping sewage and other substances on plaintiffs’ property is sustained. As to the remainder of the alleged cause of action, the motion to dismiss is granted.
AS TO THE SEVENTH CAUSE OF ACTION BREACH OF TRUST
The plaintiffs’ complaint alleges that the defendants hold the water of Cayadutta Creek and the air over the Cities of Johnstown and Gloversville in trust. The claim of trusteeship is based on the ownership by the defendants of property in the cities, the ownership of rights in plaintiffs’ property through inverse condemnation, and the delegation by the State of regulatory power over resources.
The plaintiffs allege that the manner of operation and maintenance of the sewage facilities by the defendants breaches the trust in that the operation and maintenance of the sewage facilities causes pollution of Cayadutta Creek and the air in the vicinity of the joint sewage plant in the City of Johnstown and at points along the facilities, including a large pipe running through the City of Gloversville to the joint sewage plant. The plaintiffs argue that the trust is breached if the trust asset is not used reasonably, or is used in contravention of statute, or is reallocated to uses which have less breadth than prior uses, or is no longer used for its natural purpose. Plaintiffs assert that each of these tests are met in the present situation.
The public trust doctrine has its origin in English law. The King held title to navigable waters and tidelands, subject to the rights held by the public of fishing and access for naviga *770 tion. In order to effectively convey land subject to the doctrine, Parliament had to join the King in the transfer. (See People of Town of Smithtown v Povermo, 71 Misc 2d 524, 526, revd on other grounds 79 Misc 2d 42.) Even a joint transfer was not effective if the transfer was for purely private purposes. (Marba Sea Bay Corp. v Clinton St. Realty Corp., 272 NY 292, 296.)
The public trust doctrine in its original form does not apply here. The only body of water involved in plaintiffs’ cause of action is Cayadutta Creek, which is not a navigable waterway. (Matter of City of Johnstown v Water Pollution Control Bd., 12 AD2d 218.) Even if it was a navigable waterway, the doctrine would not apply since there is no allegation of interference with the public’s right to fish or with the public’s right of access for navigation, or that the land under the stream has been improperly alienated. Thus, as traditionally interpreted, the public trust doctrine does not apply in this case.
Plaintiffs cite Fletcher v Hylan (211 NYS 727), as a case where the public trust doctrine has been applied to public property other than water resources. Properly understood, that case does not involve the public trust doctrine. It concerns a city-owned radio station used for private purposes. It holds that city property can only be used for city purposes. Plaintiffs have not alleged that the alleged trust is not being used for city purposes. Thus, plaintiffs have not stated a Fletcher cause of action.
Nevertheless, this court must consider whether the public trust doctrine should now be expanded. Especially significant is the public concern in the quality of the environment. (See ECL 1-0101, 15-0105, 17-0101, 19-0103.)
In order to apply to the present case the doctrine must include all natural resources owned by any governmental body. The duties of the "public trustees” would be to use the resources for the public benefit. Plaintiffs have suggested four more specific tests of trustee duties.
First, they attempt to use the private trust standard, i.e., that trustees must use trust assets in a reasonable fashion. This standard must be rejected. While the use of the name "public trust” may suggest duties similar to those under a private trust, that interpretation is not feasible. If the court could reverse executive action concerning natural resources merely because the action was deemed unreasonable, then the *771 court would be a superexecutive body. It is not the duty of the courts to review executive action in such a manner.
Second, plaintiffs assert that statutes should be applied to decide the duties of the "public trustees”. Application of statutes is primarily the duty of the executive branch. Thus, once again plaintiffs’ standard would impracticably entwine the courts in review and reformation of executive policy. Furthermore, the plaintiffs cite only ECL 17-0701 et seq., 19-0701 et seq. as statutory standards of duty. These statutes do not directly give individuals actionable rights. (ECL 17-1103, 19-0705.) To allow individuals to apply these statutes to define public trustee duties would be to avoid the clear intent of ECL 17-1103 and 19-705. Also, in the instant case plaintiffs attempted to directly use statutes in their sixth cause of action. That claim was dismissed with prejudice on a consent order as heretofore stated. To allow the same statutes to define a standard of duty here would be to avoid the effect of that order.
Plaintiffs suggest two other standards to be applied: first, that the trust asset may not be used in a manner which has less breadth than its prior uses, and second, that the trust asset must be used for its natural purpose.
Without delving into the problem of further defining these tests, it is clear that they cannot be applied absolutely. Both standards would limit the uses of resources irrespective of the harm or benefit that a particualr use might incur. Where there is a clear public benefit as a result of narrowing the use of a resource or from a "non-natural” use, the use should be allowed. "[I]t would be inappropriate for a court to declare that governmental resource allocations are irreversible”. (Sax, The Public Trust Doctrine in Natural Resource Law: Effective Judicial Intervention, 68 Mich L Rev 471, 482.) Plaintiffs have not alleged that the public benefits achieved in this case are not reasonably justifiable.
The court is unable to determine any other standard to define the trustee duties. The plaintiffs have failed to allege any facts from which it can be shown that the "public trustees” have not used the resources for the benefit of the public. Their conclusionary allegation of breach of trust and detriment to the public does not allege that any such action is not reasonably justifiable. Thus, no cause of action is stated.
The motion to dismiss the seventh cause of action is granted.
*772 AS TO THE CLASS ACTION
Plaintiffs have cross-moved for an order allowing the action to be maintained as a class action. The defendants have objected to the cross motion solely on the ground that it is premature, reserving the right to contest the cross motion on the merits.
The issue presented is not whether the cross motion should be granted, but whether the cross motion should be considered at this point in the litigation. The defendants argue that CPLR 902 requires plaintiffs to make their motion after the time for defendants to serve a responsive pleading has expired. (People ex rel. Kaufmann v Goldman, 86 Misc 2d 776, 777-778; see, also, Turner v Codd, 85 Misc 2d 483, 485; 2 Weinstein-Korn-Miller, NY Civ Prac, par 902.11.)
Even if the defendants’ interpretation of CPLR 902 is correct, under CPLR 2001 the defendants must show that a substantial right has been prejudiced. The only potential prejudice identified by the defendants concerns notice to class members with potentially adverse interests. This prejudice, if any, is caused not by the timing of a decision on plaintiffs’ cross motion, but by the notice requirement.
The only other prejudice present is to the defendants. If a decision is made now on plaintiffs’ cross motion, the defendants would be denied an opportunity to contest it on the merits. This prejudice arises solely because plaintiffs’ cross motion was premature. In order to avoid this prejudice, but without holding the motion to be premature, the court will allow the defendants to contest the motion on the merits.
Deciding plaintiffs’ cross motion at this time is in accordance with the policy of CPLR 902 and the 60-day requirement, i.e., a prompt disposition of class action status early in the litigation. (See Siegel, NY Prac, § 142; 2 Weinstein-Korn-Miller, NY Civ Prac, par 902.11; Twenty-First Ann Report of NY Judicial Conference, 1976, p 252.)

 Interestingly, in Sammons (supra, p 349) the plaintiff sought to restrain the City of Gloversville from "continuing to empty the contents of its sewers and drains into the Cayadutta creek and to recover damages sustained thereby”.