**In re Mary Lou MOUNT, Debtor.**

**Bankruptcy No. 1–86–02029.**

United States Bankruptcy Court, S.D. Ohio, W.D.

May 18, 1987.

See also, Bkrtcy., 74 B.R. 269.

Paul E. Lukey, Cincinnati, Ohio, for debtor.

Eric M. Jensen, Cincinnati, Ohio, for claimant.

William Schumacher, Cincinnati, Ohio, Trustee.

### DECISION AND ORDER ON OBJECTION TO CLAIM OF DAVID JOSEPH CO.

BURTON PERLMAN, Bankruptcy Judge.

Debtor filed this Chapter 13 case listing the David J. Joseph Company ("claimant") as a disputed unsecured creditor in the amount of $4,670.02. Debtor's plan, which has been confirmed, contains a provision that, in the event that some amount is owed to this creditor, the monthly payment provided for in the plan will be increased sufficiently to liquidate that debt.

Claimant timely filed a claim in the amount for which it had been scheduled in debtor's case, asserting in the proof of claim that the consideration for the debt was "unlawful retention of disability benefits paid by claimant to debtor." The proof of claim infers that the claim is founded on a writing, for it states that the claim is founded upon an attached complaint filed May 22, 1986, in the Common Pleas Court for Hamilton County, Ohio. The complaint contains three counts. In the first count, it is alleged that from August 6, 1985 through February 15, 1986, claimant paid debtor her full wages. For part of that same period, claimant's disability insurance carrier paid debtor long-term disability benefits. Claimant alleges that the amount in controversy, $4,670.02, should be repaid to it, the amount it paid in wages for the period from September 10, 1985 through February 15, 1986, in view of the disability payments during this same period. In the second count, claimant bases an assertion of unjust enrichment in the same amount upon the same facts. The third count appears to be a third basis for relief, in this instance based upon a demand for reimbursement, an alleged failure on the part of debtor adequately to respond, amounting to a conversion of property of claimant.

The Chapter 13 trustee, on January 8, 1987, filed his motion combined with an order allowing claims, listing claimant, and advising debtor that she had 30 days from the date of the order "to file a written objection to any claim which may be improper." On January 22, 1987, debtor timely filed an objection to the claim of this claimant, asserting that "debtor has no contractual relationship with company."

Pursuant to B.R. 3007, the objection to claim came on for hearing. There being no demand for relief stated by debtor, the

matter proceeded, not as an adversary proceeding pursuant to B.R. 7001 et seq., but as a contested matter under B.R. 9014. At the hearing, testimony was offered on behalf of both claimant and debtor.

Basic facts are that debtor, while employed by claimant, was paid bi-weekly at a gross pay of $580.00, and a net pay of $448.70. The amount claimed by claimant, $4,670.02, is derived by multiplying gross pay for one pay period, times eight pay periods, with a slight adjustment. Debtor, on the other hand, admits indebtedness to claimant, but in the amount of $447.00. She derives this by calculating that she was paid $5,222.00, four and one-half months at full pay, of which she was entitled to retain $3,480.00, three months at full pay. The net of these two figures is $1,742.00. (We note that this position differs from that taken by her counsel in response to claimant's demand for repayment prior to the filing of the bankruptcy case.) Against this amount, debtor asserts that she is entitled to credit for vacation pay in the amount of $775.00, and severance pay in the amount of $516.00. Debtor conceded that she may have been paid for another pay period as contended by claimant. She did not have a record of that final payment.

The events with which we are here concerned began in December, 1983, when debtor was injured in a fall, while she was employed by this claimant. The fall gave rise to a worker's compensation claim. That claim before the Worker's Compensation Commission of Ohio is not directly involved in the present contested matter. What is involved here is disability payments made to debtor by claimant. Claimant maintains a disability program for the benefit of its employees. It has two parts. The first part comprises short-term disability benefits. That is, an employee, unable to work by reason of disability, is eligible for full pay for the first 90 days. Claimant is self-insured with respect to this benefit. If an employee remains disabled beyond the 90–day period, the employee is then eligible for long-term disability benefits at the rate of 60% of salary for the period from the 91st day until retirement age if

applicable. Claimant is insured by Union Mutual Insurance Company for its long-term disability program. This arrangement is set out in an Employees' Practices Handbook which was given to debtor, as it is to all employees of claimant.

Claimant was advised in June, 1985 by Dr. Griffin, who had been consulted by debtor, of debtor's disability. The onset of disability was said to be June 12, 1985. Claimant then informed debtor that they wished for her to be examined by Dr. McTighe, for it was company policy to require a second opinion as to disability. Such a procedure is provided for in the Handbook. Claimant then was advised by debtor's worker's compensation attorney that debtor presently declined short-term disability benefits, "she [debtor] does choose to wait and receive compensation for lost time pursuant to Bureau rules, not under a Short Term Disability Policy which will lead to a later inference that the problem is not the result of the fall in December, 1983." Debtor then entered the hospital on August 6, 1985.

At that time, claimant dropped its requirement for a second opinion, and began payment to debtor of short-term disability payments, that is, full wages. This continued for a three-month period until November 3, 1985. At that time, debtor advised claimant that she would be able to come back to work at full capacity. Claimant was dubious about this and so proposed that debtor go on involuntary leave at full pay so that claimant could get a doctor's report verifying her ability to return to work. This proposal of involuntary leave, effective November 4, 1985, was set out in a letter of October 29, 1985, the letter containing space for a signature attesting to the agreement of debtor. Debtor signed at the indicated space on November 1, 1985. Pursuant to this arrangement, debtor continued receiving full pay until February 15, 1986. Before claimant received the doctor's report mentioned in the agreement regarding involuntary leave, claimant was advised by debtor that she could not return to work. In January, 1986 debtor entered the hospital for a gall bladder operation.

In January, 1986 debtor made application, which application was prepared by claimant, for long-term disability benefits. After receiving the application, the insurer made the decision that debtor was entitled to long-term disability benefits beginning September 10, 1985, and issued a lump-sum check to debtor for long-term disability payments which was received and cashed by debtor. (The beginning date for long-term disability payments by the insurer evidently was derived by dating entitlement for long-term disability benefits beginning at the conclusion of an initial 90–day short-term disability following the onset of disability.) The decision by the insurer to commence disability payments as of September 10, 1985, rather than after claimant's payment of full wages ended was unexpected so far as claimant and debtor were concerned, for claimant's representative testified that the present claim would not have been asserted except for the subsequent overlapping payment by its long-term disability insurer. It was that overlapping payment which is the cause of the present controversy.

After this determination by the insurer, claimant took the position that debtor was not entitled to keep both of the overlapping payments. In late February, 1986 or early March, 1986, claimant made contact with debtor and demanded repayment of the full pay it had made to debtor for the period September 10, 1985 to February, 15, 1986, indicating that a schedule for repayments was agreeable to it. Negotiations ensued. Debtor's negotiating position in regard to restitution was that she contended through her attorney that she was entitled to short-term disability benefits for the period June 12, 1985 to August 6, 1985 in the amount of $1,464.42. In addition, debtor asserted that she was entitled to a bonus in an amount in excess of $1,000.00. Debtor's proposal was that she return to claimant long-term disability benefits "for the periods during which Ms. Mount received short-term benefits, less those amounts due Ms. Mount for her bonus and lost wages for the period of June 12 to August 6, 1985." (The evidence was, by the way, that debtor was paid her bonus by the company for the disputed period, and that is not here in issue.) The parties failed to reach an agreement. Claimant then, in May, 1986, terminated debtor as an employee on grounds of wrongful conversion of its property for failure to make restitution to which claimant believed it was entitled. As we have said, on May 22, 1986, claimant filed suit in the state court for the purpose of securing an adjudication of its right to such restitution. Debtor thereupon on June 19, 1986, filed this Chapter 13 case.

Against the foregoing background which we find as facts, we turn to the question of the validity of the claim asserted by this claimant in its proof of claim. We assume that claimant is asserting alternative bases for its claim as set forth in the first two counts in its Common Pleas Court complaint, both of which sound in restitution. That being the case, claimant has the burden of showing that restitution should be granted to it, for the mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor. Restatement of Restitution, § 1. Unjust Enrichment Comment (c.).

We reach the conclusion that claimant has failed to make out a case for restitution. Its assumption is that it is entitled to restitution either because it made payments which overcompensated debtor and was inconsistent with the scheme set forth in the employees' manual, or that it would not have made the payments it did if it had known that debtor was also going to be paid long-term disability payments by claimant's long-term disability insurer. The first alternative provides no basis for a contention of unjust enrichment, because the payments which it made between September 10, 1985 and February 15, 1986 were voluntarily made by claimant. Surely, claimant cannot rely upon the scheme set forth in its employees' manual where it freely and voluntarily, without duress or coercion, departs therefrom. As to the second alternative, claimant has failed to make a case entitling it to restitution because it assumed the risk that its insurer would also make long-term disability payments for the period from September 10, 1985 to

February 15, 1986. *Beecher v. Able*, 575 F.2d 1010, 1015 (2nd Cir.1978). The payment by the insurer was not unconscionably obtained by this debtor. Indeed, it was claimant which processed the claim. Furthermore, claimant formulated an agreement upon which it sought debtor's signature before making the payments for part of the overlapping period, that between November 14, 1985 and February 15, 1986. Had it meant to shift the risk to debtor of restitution to claimant in the event of payment of long-term disability payments by the insurer, it could have and should have so provided in that agreement. It is held that there is no unjust enrichment where one makes a payment of money to one he does not owe, where the payment is made voluntarily and with knowledge of the facts. *Evans v. City of Johnstown*, 96 Misc.2d 755, 410 N.Y.S.2d 199, 203 (Sup. 1978).

■ The second count of claimant's Common Pleas Court complaint expressly states that it is based upon unjust enrichment. That phrase, however, in our view, does not present a claim distinguishable from that of the first count of the complaint. One is enriched if he has received a benefit, but is only unjustly enriched if the benefit which he received in justice and equity ought to be returned to the one bestowing the benefit. As we have seen in our prior discussion, claimant has not been able to establish a right to a return of the money which it paid to debtor. It follows from that conclusion that debtor has not been unjustly enriched. See, 66 Am.Jur.2d. 945, § 3, Unjust Enrichment. It follows as well that the third count of the Common Pleas complaint, that for alleged conversion of claimant's property, is without foundation.

■ While claimant has failed to establish its claim, this court of equity must pay attention to the admission by debtor that she is obligated to claimant in some amount. She has stated that amount to be $447.00. Her figure must be corrected by the additional pay period which she did not take into account in arriving at her figure, but which she admitted was paid. This brings her admitted amount to $1,027.00.

This ultimate figure is based upon an allowance to her to $775.00 for vacation pay and severance pay in the amount of $516.00. We agree that debtor is correct in allowing herself severance pay in the amount of $516.00. The evidence at the hearing was that severance pay is allowed by this claimant except where an employee is separated for cause. In this case, claimant's position is that there was cause in the separation because debtor wrongfully converted the money which she refused to return to claimant. As we have seen, there was no wrongful conversion. Debtor is entitled to severance pay.

■ We conclude, however, that debtor is not entitled to vacation pay for 1986. (She did receive her vacation pay for 1985.) The evidence was that vacation pay is allowed to employees who are in active service. This was not so for debtor during 1986. Debtor is therefore not allowed vacation pay for 1986. The $775.00 amount must therefore be added to the amount in which claimant's claim will be allowed. This totals $1,802.00.

Accordingly, claimant's claim will be approved in the amount of $1,802.00.

So Ordered.